LANDON, J., concurred; MAYHAM, J., not acting.

Judgment reversed, new trial granted, costs to abide event.

---

IN THE MATTER OF THE APPLICATION OF THE ATTORNEY-GENERAL FOR A WRIT OF MANDAMUS ADDRESSED TO THEODORE W. MYERS, AS COMPTROLLER OF THE CITY OF NEW YORK, APPELLANT.

*Duty of the Comptroller of the city of New York to issue revenue bonds to pay the proportion of the State tax chargeable to that city — no deduction is proper, of the tax on the amount added to the assessed valuation by the State Board of Equalization, nor of the amount raised in the State tax levy and not appropriated, nor of the amount of a deficiency in the city tax levy to meet such bonds.*

In a proceeding, instituted for the purpose of obtaining a *mandamus* to compel the Comptroller of the city of New York to issue and negotiate Revenue Bonds, and from the avails thereof to pay to the Treasurer of the State the amount

owing for State taxes from said city for the tax imposed in 1889, it is no defense to the Comptroller that the Board of Estimate and Apportionment of the city of New York, in December, 1889, deducted from their estimate of the amount which was to be raised by tax to meet such Revenue Bonds, that proportion of the tax which was imposed upon an amount added by the State Board of Equalization to the assessed value of real estate in the city of New York; and also that proportion of the State tax which, it was claimed, had been imposed to meet several items in the State appropriation bill, which, after its passage by the legislature, had been vetoed by the Governor.

The amount certified by the Comptroller of the State of New York for the State tax in the city of New York, cannot be changed by the Comptroller of that city and made to conform to the appropriation made by the Board of Estimate and Apportionment of that city for that purpose; and the Comptroller of the city of New York is obliged to issue sufficient revenue bonds to enable him to pay from the proceeds thereof the amount of the State tax, although the Board of Estimate and Apportionment has not provided a sufficient amount in the tax levied upon the city to pay them.

The Comptroller of the State of New York, under such circumstances, is not required to apply for a *mandamus* against the Board of Estimate and Apportionment to compel them to make a new assessment for a proper amount.

A law imposing a tax, which is otherwise valid, is not impaired or rendered invalid under section 20 of article 3 of the Constitution of the State of New York by the fact that the appropriation bills, by reason of their reduction by the veto of certain items thereof by the Governor, do not appropriate all the money which will probably be received under such tax.

APPEAL by Theodore W. Myers, as Comptroller of the City of New York, from an order made at a Special Term of the Supreme Court held in Ulster county, dated May 10, 1890, and entered in the office of the clerk of the county of Albany on July 28, 1890.

*David J. Dean*, for Myers, as Comptroller, appellant.

*William A. Poste*, for the Attorney-General, respondent.

LEARNED, P. J.:

This is a proceeding for a *mandamus* to compel the Comptroller of New York City to issue and negotiate revenue bonds, in order that from the avails thereof he may pay to the treasurer of the State $5,685,660.41, alleged to be owing for State taxes from said city for taxes imposed in 1889. (Chaps. 309, 311, 335.)

Of this sum it appears that the sum of $4,519,641.83 is not disputed, and it was conceded on the argument before the Special Term that this sum would be immediately paid. The brief of the defendant on this appeal states that since then it has been paid.

The residue may be conveniently divided into two sums, since the grounds on which payment of these sums is resisted are different; first, the sum of $359,839.65 is the proportion of the State tax imposed on $119,425,063, which is the amount added by the Board of Equalization of 1889 to the assessed valuation of the city of New York; second, the sum of $818,767.41, is claimed to be the proportion of the State tax which was imposed by reason of certain items which were in the supply bill as it passed the legislature, but which were vetoed by the governor, and, therefore, never became valid.

The decision of the Special Term, as to the first of these sums, was that the affidavits of the defendant have put in issue the regularity of the proceedings of the Board of Equalization, and that a peremptory writ of *mandamus* would not issue. An alternative writ was ordered. As to the second, the Special Term ordered a peremptory *mandamus*. The Comptroller appeals from the whole of the order, but the argument has been directed to that part which ordered a peremptory *mandamus*.

Chapter 309, above mentioned, imposes a tax of twenty-three one hundredths of a mill for canal purposes. Chapter 311 imposes a tax of one mill and eighty-one one hundredths of a mill for the general fund; three-tenths of a mill for canal purposes and ninety-seven one hundredths of a mill for school fund. Chapter 335 imposes a tax of twenty-one one hundredths of a mill for the canal sinking fund. These make an aggregate of three mills and fifty-two one hundredths of a mill. This required a levy of State tax on the city of New York for the fiscal year beginning October 1, 1889, of $5,685,660.41.

When the board of estimate and apportionment acted in December 31, 1889, instead of including the above amount in their estimate, they deducted two sums, viz., that proportion of the tax which was imposed on the sum of $119,425,063, the amount added by the State Board of Equalization to the assessed value of real estate in New York, making $359,839.65; and also that proportion of the State tax which is alleged to have been imposed on account of several items in the State appropriation bill, which did not become valid because vetoed by the governor. (See chaps. 569, 570 of the year 1889.) Those items are stated to amount to $1,808,550.13, for which the tax would be $818,767,41.

The State tax is by law payable, one-half on the fifteenth of April, and the other half on the first of May; that is, the taxes now in question would be payable on those days in 1890.

In the city of New York, however, as appears by chapter 410, Laws of 1882 (§§ 814, 817, 833, etc.), the assessment-rolls are delivered to the receiver of taxes the first of September, and taxes are then payable. Such rolls, therefore, cannot include the State tax to be levied for the fiscal year beginning with October first next succeeding. Hence it is that, practically, the payment of the State tax is, in New York city, about a year behind. For the purpose of meeting this difficulty it is provided by the law last cited, in section 153, that to enable the city to make payment of its quota of the State tax at the proper time, the Comptroller of the city shall issue revenue bonds, and from the proceeds pay the tax, and the amount thus paid shall be levied in the then next annual levy.

One point urged by the appellant is, that the Comptroller cannot be compelled to issue revenue bonds and pay the State tax for any amount in excess of the sum which has been appropriated by the Board of Estimate and Apportionment and levied for that purpose. But the statement above made shows that this cannot be correct. This State tax was to be paid on or before May 1, 1890. And the duty of the Comptroller to issue bonds for that purpose arose before that day. The appropriation by the Board of Estimate and Apportionment in respect to that tax could not lawfully change the amount certified by the Comptroller of the State. For the board is to include the amount necessary to pay the State tax (§ 189). Section 154 gives a general authority to the Comptroller of the city to anticipate its revenues to meet expenditures under the appropriation. But section 153 is specific; and it not only authorizes, but it requires the Comptroller to issue revenue bonds, and from the proceeds to pay the State tax.

It is true that, by the refusal of the Board of Estimate and Apportionment to put in their final estimate the proper amount, there will not be raised "in the then next annual levy" enough to meet these revenue bonds. But we think that the neglect of certain officials to do their duty should not prevent the Comptroller of the city from doing his. If the Board of Estimate and Apportionment had a discretionary power to determine how much should be paid to the

State for its tax, the question would be very different. But that determination belongs to the Comptroller of the State. (Laws 1859, chap. 312, §§ 8 and 9, as amended by chap. 351, Laws of 1874.)

It is undoubtedly true, as urged by appellant, that if the State tax could be paid only from money already collected and in the hands of the Comptroller of the city, and if such money had not been collected, *mandamus* would not lie. But in the present case the Comptroller of the city has the power to raise the money and the statute requires him to do so. Therefore, payment is in his power.

The appellant urges that by section 9, last cited, the remedy of the Comptroller of the State is by *mandamus* against the Board of Estimate and Apportionment to compel them to make a new assessment. That would probably be his remedy if it were not for the peculiar provision authorizing the Comptroller of New York city to issue revenue bonds and from their avails to pay the tax. If it is his duty to do this, then it will be for the Board of Estimate and Apportionment, under section 190, to provide for the payment of these obligations of the city. We think, therefore, that this first objection against the *mandamus* is not valid.

The next point is that the legislature had no constitutional power to raise money by tax for items in the supply bill which were subsequently vetoed by the Governor.

This argument assumes as its basis that the tax of one mill and eighty-one hundredths of a mill for the general fund and for those claims and demands which shall constitute a lawful charge upon that fund, imposed by chapter 311, would raise exactly the amount afterwards appropriated from the general fund by chapters 569 and 570 as they passed the legislature; and, therefore, would raise more than enough to meet the appropriations of those acts as they finally became laws. This was assumed by the Board of Estimate and Apportionment. But we see no proof. It may be that a calculation of the amount which would be produced by this tax would show it to be in excess of the total of appropriations made in those bills. But as there is no evidence as to the condition of the bills when they passed the two houses of the legislature, we cannot assume that this tax would have produced exactly the amount of the appropriations then contained in those bills. Nor is there even any evidence as to the amount of appropriations vetoed by the governor.

But passing this difficulty we come to appellant's argument. He urges that, by article 3, section 20 of the Constitution, every law imposing a tax shall distinctly state the tax and the object to which it is to be applied. The tax in question states that it is for the general fund "and for the payment of those claims and demands which shall constitute a lawful charge upon that fund during the fiscal year," etc.

The only question is whether that states the object to which the tax is to be applied. That is settled in the affirmative in *People ex rel. Burrows* v. *Supervisors of Orange* (17 N. Y., 235). That decision and the subsequent constant practice of the legislature must be deemed conclusive. A contrary construction would produce great embarrassment, as is well pointed out in the opinion then delivered.

Now, if this law is valid under the Constitution, its validity is not impaired by the failure of the legislature subsequently to appropriate all of the money which would probably be received under the tax. Yet that is the appellant's argument. He urges that because the legislature did not, by a valid law, appropriate all the money which (as he says) this tax will raise, therefore, the law imposing the tax is invalid. Or, rather, he says that the City of New York may compute how much of the law imposing the tax is valid and how much is invalid. For the city does not object to paying a part of the amount imposed by this chapter 311 for the general fund. That is to say, the City of New York may determine that the tax of one mill and eighty-one one hundredths is valid only to the extent of about one mill and thirty one hundredths of a mill.

This is the position of the appellant. Because he proposes to reduce the tax which the city is to pay, on this ground (exclusive of the other proposed reduction), to what would be produced by a tax for the general fund of about one mill and thirty one hundredths of a mill, in addition to the tax for schools and canals. It seems to us that this evidently cannot be done. The legislature must be permitted to levy such tax for the general fund as it determines to be necessary. And though it fails to appropriate a part of the money which it may be supposed will be thereby raised, such failure does not make the law imposing the tax void wholly or fractionally.

224    PEOPLE ex rel. VAN HISE v. POLICE COMRS.

THIRD DEPARTMENT, NOVEMBER TERM, 1890.

It may be noticed that the session of 1889 ended May sixteenth, and that all the bills which have been above referred to were approved by the governor subsequently to that date. But this does not affect the argument as to the constitutionality of the act imposing a tax.

The order is affirmed, with fifty dollars costs and disbursements.

LANDON and MAYHAM, JJ., concurred.

Order affirmed, with fifty dollars costs and disbursements.