THE PEOPLE, *ex rel.* BURROWS, *v.* THE SUPERVISORS OF ORANGE COUNTY.

The constitutional requisition that every law for the imposition of a tax shall distinctly state the object to which it is to be applied, is satisfied by the declaration that the money is to be paid into the treasury to the credit of the General Fund, although such fund is applicable to any object which the legislature deems proper.

APPEAL from the Supreme Court. The supervisors of the county of Orange having, at their annual meeting in November, 1855, neglected and refused to levy and cause to be collected the sum of $31,668.60, the proportion of said county of the state tax required to be levied by chap. 335 of 1855, the comptroller, in behalf of the people, sued out an alternative *mandamus* requiring them to reassemble and cause the amount before stated to be raised, collected and paid into the treasury of the state, with costs of the application and writ, or to show cause why, &c. The supervisors made a return, setting forth that the act under which the

tax in question was required to be levied was in violation of section 13, article 7 of the constitution, which provides that " every law which imposes, continues or revives a tax, shall distinctly state the tax, and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object," in this, viz :. that the act does not distinctly state the object to which the said tax was to be applied, but provides that the money so to be raised and collected shall be paid into the treasury of the state to the credit of the general fund ; that, by law, there is chargeable upon and payable out of the said general fund, all salaries and contingent expenses of the officers of the State of New-York,. including the members and officers of the state legislature and of the court for the trial of impeachments ; the moneys required for the support of the state prisons ; the annuities payable to Indians, and all expenses relating to Indian affairs ; the expenses of all printing done by the state, and also the payment of all moneys directed by law to be paid out of the treasury and not especially charged upon any other fund.   They alleged that the act was, for the cause aforesaid, null and void, and therefore they refused to levy the tax.   The People demurred to this return. The demurrer was sustained, and a peremptory *mandamus* awarded by the court at special term ; and this judgment having, on appeal, been affirmed by the court at general term in the second district, the defendants appealed to this court.

*Samuel Beardsley*, for the appellants.

*John H. Reynolds* ( the attorney-general being ill),for The People.

HARRIS, J.   In arranging the fiscal affairs of the state it has been found convenient, instead of bringing all its revenues together into a common fund from which all the varied

expenditures of the government should be drawn, to distribute those revenues into distinct and independent funds, according to the source from which they are derived, and the purpose to which they are to be devoted. These funds have, from time to time, in the progress of the history of the state, been created by legislative and sometimes by constitutional requirement. Their existence is recognized in the whole body of state legislation, and even in the constitution itself. Prominent among these funds are the common school fund, the literature fund, the United States deposit fund, the canal fund, the canal debt sinking fund, the general fund, and the general fund debt sinking fund. Each of these funds has its own peculiar sources of income, and each is chargeable with its own appropriate expenditures.

To replenish any one of these, and thus to increase its ability to meet the payments which may be charged upon it, is a legitimate object of taxation. It is certainly competent for the legislature, whenever, in its judgment, the exigencies of the state require it, to increase the revenue of either fund by a direct tax. In respect to some of them, the constitution has made it the duty of the legislature, upon certain contingencies, thus to increase their revenues.

The law whose validity is now in question, was enacted for the benefit of one of these funds. It was intended to increase the revenue of the general fund. It imposes a tax which, when collected, is to be paid into the treasury of the state, to the credit of the general fund. That the legislature had the power thus to provide a new source of revenue for that fund is not denied. The only question is, whether it has exercised that power in the manner prescribed by the constitution.

The thirteenth section of the seventh article of that instrument declares that every law which imposes a tax shall distinctly state the tax and the object to which it is to be applied. That the tax is sufficiently stated in the law

before us is conceded. The only question is whether the object of the tax is also sufficiently stated.

I think it is. The rate of taxation is stated. To state the amount which the tax would produce was of course impossible. This amount, whatever upon the collection of the tax it may prove to be, is not only to be paid into the treasury, but is to be credited to that fund whose office it is to support the state government. Suppose the legislature, instead of merely declaring the general object to which the amount raised by the tax should be devoted, had attempted to accommodate its action to the construction of the constitution for which the defendants now contend, and had not only declared the object of the tax, as it has done, but had gone on to appropriate it as well as it might without knowing what amount would be raised, what would have been the result? Suppose it had been declared in the law, as it was suggested by the distinguished counsel who represented the defendants upon the argument it should have declared, that the money to be raised by the tax should be appropriated to the payment of the salaries of the judiciary, and the expenses of the executive and legislative departments of the government, what then would have been effected more than has now been done? The tax payers would then have learned, as they now learn, that the general fund was deemed insufficient to defray the expenses of the government and that it was necessary to increase its revenues by taxation. The tax to be collected under such a law would, as under the law in question, be paid into the general fund and would be appropriated as now to the payment of the expenses chargeable upon that fund. In short, the object of the tax in that case would not appear any more distinctly than it now appears. All that could be said in such a case in respect to the object of the law would be, that in the judgment of the legislature, the fund charged with the payment of the expenses of the government needed to be replenished

by taxation.   This object appears distinctly upon the face of the present law.

Again; suppose the construction for which the defendants contend should be adopted, how is the degree of particularity with which the objects of the tax are to be specified to be determined?   It might satisfy the counsel who argued this cause if it were declared that the tax was imposed to defray the expenses of the several departments of the state government, or even that the general object of the tax was the support of the government, but another might contend and I think with equal plausibility — dwelling with emphasis upon the fact that the object of the tax is required not only to be stated in the law, but to be distinctly stated — that the particular objects to which the money collected is to be appropriated must be set forth with as much minuteness of detail as in an appropriation act or a supply bill.   I cannot see why the argument of the defendants' counsel does not lead directly to this conclusion.   That any such thing was intended by the framers of the constitution, I cannot suppose.

The constitution itself, in the very article in which the section under consideration is found, has furnished a precedent in support of the construction adopted by the legislature.   The third section of this article provides for a tax to be collected, not from the taxable inhabitants of the state, but from the tolls and income of the canals, and it was deemed a sufficient designation of the object of this tax to declare that it should be paid into the treasury of the state " for the use and benefit of the general fund."   It is obvious, I think, that the legislature intended to frame their act after the model of this provision of the constitution; and it seems to me that it might very logically have been inferred that what was deemed by the framers of the constitution to be a sufficient specification of the object of a constitutional charge upon the revenues of the canals, might also be deemed a sufficient statement of the object of a tax to increase the revenues of the same fund.

Had the legislature instead of raising money by tax to defray the necessary and incidental expenses of government, as by the law in question it is proposed to do, determined to increase the revenue and efficiency of any other one of the funds devoted to the expenditures of government, as for example the common school or literature fund, I suppose no one would have been found to insist that an act constructed after the pattern of that now under consideration would not have satisfied the requirement of the constitution, in respect to the mode of stating the object of the tax. It would have been quite sufficient for the legislature, in stating the object of the tax, to say that the money to be raised when collected should be paid into the treasury of the state to the credit of the common school fund or the literature fund. The only distinction that I can perceive between such a law and one designed to increase the revenues of the general fund is, that in the latter case the money when collected and paid into the treasury may be applied to a greater variety of expenditures than in the former case. In neither case can it be paid out except in pursuance of an appropriation act, distinctly specifying both the amount appropriated and the object to which the appropriation is to be applied

If the construction which has been adopted by the legislature, in this and every other tax law enacted under the present constitution, is to be rejected, I can see no other rule of interpretation short of a complete embodiment of the appropriation act in the law imposing the tax. It would be necessary for the legislature, after having stated the tax, and the fund to which, when collected and paid into the treasury it is to be credited, to proceed and specify the persons to whom, and the purposes for which, it shall be disbursed. Every tax bill would then be an appropriation bill also. It is obvious that such a requirement would be productive of infinite embarrassment to the government. The argument, *ab inconvenienti*, against such an interpretation of the provision in question, seems to me to be very strong.

The People *v.* The Supervisors of Orange.

Indeed, I think it would operate, practically, to deprive the legislature of all power to raise money by taxation.

I have said enough, I trust, to satisfy even those who would adopt a more strict construction of the constitutional provision under examination, that the legislature has given it some, I think I may say a reasonable effect. If so, I claim that enough has been shown to sustain the law. Some respect is due to the opinion even, of a coördinate power of the government. A legislative act is not to be declared void upon a mere conflict of interpretation between the legislature and the judicial power. Before proceeding to annul, by judicial sentence, what has been enacted by the law making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption. "It is not a light thing," said the late Chief Justice OAKLEY, *clarum et venerabile nomen,* "to set aside an act of the legislature, even when the objections to its validity are grave and weighty; but when they touch, not the substance of the law, or the authority of the legisla ture to pass it, but are merely criticisms upon its form or phraseology, the exercise of such a power by the judiciary of the state would be prolific of evil, and would soon be universally condemned." This was said while pronouncing the judgment of the Superior Court in the case of *The Sun Mutual Insurance Company* v. *The City of New-York* (5 *Sandf.*, 10), in which case the same objection which is urged against the validity of the law now under consideration was relied upon to defeat a similar act of the legislature. The law in that case provided that the tax, when collected, should be applied towards defraying the various contingent expenses legally chargeable to the city and county of New-York, and such expenses as the mayor, aldermen and commonalty of the city of New-York might in any manner sustain or be put to by law. The court held that the object of the tax was stated as distinctly as, from the nature of the subject, could justly be required.

The sum of the whole argument is this: the general fund is a thing long and well known by every intelligent citizen of the state. Its existence is recognized by the constitution itself. It is an object to which money has often been and may now lawfully be appropriated. The legislature thought fit to make an appropriation to this fund. For this purpose it directed a tax to be levied. It is distinctly stated in the law that this was the object for which the tax was imposed. The constitutional requirement in this respect was thus satisfied.

The decision of the Supreme Court, therefore, was right, and should be affirmed.

SELDEN, ROOSEVELT, PRATT and STRONG, Js., concurred; JOHNSON, C. J., COMSTOCK and DENIO, Js., dissented.

Judgment affirmed.