PEOPLE *ex rel.* THIRD AVE. R. Co. *v.* GILROY, Commissioner of Public Work.

*(Supreme Court, Special Term, New York County.* April 9, 1890.)

STREET RAILROADS—CHANGE OF SYSTEM—CONSTITUTIONAL LAW.

Const. N. Y. art. 3, § 18, providing that no law shall authorize the construction or operation of a street-railway except by consent of the owners of one-half the value of the property bounded on, and also of the local authorities in control of, the street or highway on which it is proposed to construct or operate such railroad, applies not only to proposed street railroads, but to constructions undertaken by corporations on their existing lines of railroad; and Laws N. Y. 1889, c. 531, § 12, authorizing any surface railroad to operate its road by cable or electricity, instead of by animal or horse power, on consent of the owners of one-half in value of the abutting property, or, in lieu of such consent, the determination of three commissioners to be appointed by the general term of the supreme court, is obnoxious thereto, in that it dispenses with the consent of the local authorities, and undertakes to substitute for them the board of railroad commissioners.

At chambers. Petition for a peremptory writ of *mandamus.*

*Hoadley, Lauterbach & Johnson,* for petitioner.   *William H. Clark,* Corp. Counsel, for defendant.

PATTERSON, J.   The Third-Avenue Railroad Company presents its petition to this court, praying that a peremptory writ of *mandamus* be granted to require the commissioner of public works of the city of New York to issue a permit authorizing the relator to open the streets along the line of its road in said city for the purpose of changing the motive power by which its cars are propelled from horse-power to cable traction.   The petition recites that the railroad company is a corporation organized under the laws of the state of New York, and operates and maintains a street surface railroad upon certain streets named in the petition; that by section 12 of chapter 531 of the Laws of 1889 (amending the general street surface railway act of 1884) it is enacted that any surface railroad company may operate any portion of its railroad by cable or electricity, or by any power other than steam locomotive power, instead of by animal or horse power, that may be approved by the state board of railroad commissioners, and consented to by the owners of one-half in value of the property bounded on that portion of the railroad as to which a change of motive power is proposed, and, in case the consent of the property owners cannot be obtained, then the determination of three commissioners to be appointed by the general term of the supreme court shall be taken in lieu of such consent, under certain conditions; and that it is also provided by said section of the act of 1889 that "it shall be lawful for any such railroad company to make any changes in the construction of its road or road-bed at any time rendered necessary by a change in its motive power."   The petition further recites that consent to a change of motive power from the system of moving cars by horses to that of cable traction has been given by one-half in value of the owners of property along the line of the road of the petitioner, and that the state board of railroad commissioners have approved of and permitted the change to be made under certain conditions which have been accepted by the petitioner, and that the commissioner of public works has been applied to, but refuses to give the necessary permit to open the streets to enable the change to be made.   The only ground upon which the present application is opposed by the commissioner of public works is that the act of 1889, under which the relator claims the absolute right to make the change, is unconstitutional in "that it contravenes the provision of the constitution which forbids the legislature to authorize the construction or operation of a street railroad without the consent of the local authorities; that the act in question violates the constitution, because it dispenses with the consent of the local authorities, and undertakes to substitute for such local authorities the board of railroad commissioners."

The provisions of the constitution referred to by the respondent, and of which the legislation in question is claimed to be violative, are the following, (article 3, § 18, amended 1874:) "The legislature shall not pass a private or local bill in any of the following cases."   Then follows an enumeration of the interdicted subjects, and among them "granting to any corporation, association, or individual the right to lay down railroad tracks," and "granting to any private corporation, association, or individual any exclusive privilege, immunity, or franchise whatever."   Then follows this provision: "The legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which, in its judgment, may be provided for by general laws; but no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent, also, of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained," etc.   No question arises in this case respecting a private or local act.   The

statute of 1889 amending the act of 1884 is a general law, and by a general law the legislature may confer exclusive privileges and franchises; but even such general legislation is prohibited where the franchise to construct or operate a street railway is granted, unless in connection therewith the consent of the local authorities is to be obtained. In considering the constitutionality of an act of the legislature, two well-established rules are to be observed: (1) Every presumption and intendment is in favor of the constitutionality of the act, and the courts will not adopt a doubtful construction to nullify it. *In re New York El. R. Co.*, 70 N. Y. 342; *In re Gilbert El. R. Co.*, Id. 367; *Kerrigan* v. *Force*, 68 N. Y. 381. (2) Whenever an act of the legislature can be construed so as to give it effect and avoid a conflict with a constitutional provision, the court will give it such construction. *People* v. *Supervisors*, 17 N. Y. 241; *People* v. *City of Rochester*, 50 N. Y. 525; *Astor* v. *Railway Co.*, 113 N. Y. 113, 20 N. E. Rep. 594. Keeping in mind these rules, it becomes important to ascertain what were the purposes of the constitutional provision contained in the amendment referred to, and respecting the limitation placed upon the otherwise unrestricted power of the legislature over the particular subject now under consideration. Two things were had in view, both of which were, in terms, provided for. One of them was defined by Judge FOLGER, in *Re Kings Co. El. R. Co.*, 82 N. Y. 95, as follows: "It is plain that a great evil was seen to exist, and a crying need of permanent and effective repression of it. That evil was the heedless and unneeded making of street railroads, to the harm of owners of adjacent property. The means of repression was the prohibition of the construction of them without the consent of one-half of those owners, or a sober inquiry whether they ought to be constructed or operated, to be made by commissioners appointed by the court, with their determination inoperative until confirmed by the court."

But there was another evil to be guarded against, and that was the taking of the streets and highways of a municipality, and their subjection to burdens which might seriously interfere with their use, and disastrously affect the rights of the municipalities in them; and the means of repression of that evil was the requirement of the consent of the local authorities whenever a franchise for construction or operation of a street railroad was involved. The people of the state prohibited the legislature from passing even general laws which should impose burdens upon streets in this respect, unless the local authorities assented. The act of 1889 does authorize the construction and operation of a street railroad, within the meaning of the constitutional inhibition, and is not merely a regulative act if it authorizes that to be done which the relator proposes to do. So far as a mere change of motive power is concerned,—a change which may be produced without an additional grant or franchise,—it is regulative only. It is not disputed that such a mere change may be made, but the authority to make changes in the construction of the road and road-bed, interpreted as sanctioning such construction as that intended by the relator, clearly infringes the constitution. The language of the act, certainly, is broad enough to accord, if the act is valid, all that the company seeks to do under its permission; and it is evident that what it seeks to do is to make a completely new and different construction of its road and road-bed. What it proposes to do is precisely the same thing as that which it desired to do at the time of the former application for a *mandamus*, and which the court of appeals held it had not a franchise or right to do. *People* v. *Newton*, 112 N. Y. 396, 19 N. E. Rep. 831. What it claims now, under the act of the legislature, is an entirely new grant or franchise, to construct an entirely different kind of road from that which it has heretofore operated, and one which subjects the streets to superadded burdens, and, so far as I can ascertain from the papers before me, there would be almost nothing left of the present structure, but an entirely new construction will be required. It was so expressly held by the court of appeals, in the case to which reference has

been made, on the exact facts now presented again on this application. Judge DANFORTH, in the prevailing opinion, says: "The cable requires a conduit of mason work, the necessary excavation of which, on a straight stretch road, without curves, is six feet wide and from four to five feet deep. Where there if a double track, there must be two of these trenches; and, at intervals of thirty-five feet along the whole distance, they must go still deeper for drainage, and where there are curves the width of the excavation must be at least from twelve to fifteen feet. At a corner the pit will be thirty feet in width, and at the engine-houses, whence the cable extends to the conduit in the street, it will be necessary to excavate the entire street from the engine-room out to and beyond the track furthest from it. None of these things are required for the construction of a street surface railroad. None of them pertain even to its operation. They relate to some act or thing to be done below the surface."

At this point, attention is called to an ingenious and adroitly presented argument of the learned counsel for the relator, founded on the language quoted above from the opinion of the court of appeals. It is urged that, so far from what is there said being adverse to the relator's view, it supports it, and that, inasmuch as the court of appeals has said the proposed changes are not required for the construction or operation of a street surface railroad, they are not within the constitutional prohibition; for they do not relate to the construction or operation of a street railroad already existing as such. This language of the court of appeals applies only to a road built and operated altogether on the surface of a street. As is said in the same case (112 N. Y. 401, 19 N. E. Rep. 832,) the charter of the Third-Avenue Company is one which "contemplates only a road whose operations by way of structure or otherwise shall be limited to the surface of the road-way. It gives no right to open or excavate or use below its existing surface." It is perfectly plain that a street surface railroad is a street railroad; but there are now several kinds or descriptions of street railways, such as those constructed and operated on the surface alone, those constructed to be operated by cables moving in subterranean conduits, and those operated over head by an electrical system. Any or either kind might be built under the act of 1889, under the claim of a change of construction. The power granted is to build, to make new construction; as in this case to build an entirely new kind of street railroad. The corporation is a street railroad corporation, with the franchise to operate a certain description of street railroad. It is now proposed to build and operate another and distinct description of street railroad; and, although it has now the right to lay down rails, and no such right is newly accorded it, and what is granted now could not of itself constitute a railroad, yet, in conjunction with what it has, the new system constitutes a new railroad, and the right to that new railroad is derived altogether from the act of 1889. Upon the identical facts now presented, it has, as stated, been held by the court of appeals that nothing now proposed to be done by the relator is required for the construction or operation of a street surface railroad. None of these things pertain in any way, therefore, to the franchise the relator now has. They relate to something else than a mere street surface railroad; to something that is to be created different in kind from a mere surface road, something that is to be made as original construction; and in making it the company must proceed on another and enlarged franchise, radically different from that it enjoys as a simple street surface railroad.

I have not failed to be impressed with the skillful argument made with reference to the constitutional prohibition applying only to proposed street railways. I think it applies to such constructions undertaken by corporations on their existing lines of railroad, and not only to corporations to be organized, and whose roads are not yet constructed or in operation. If I am right in what I have stated to be the purposes for which the constitutional amend-

ment was adopted, I think there can be no reasonable doubt that the taking and occupation of the streets by the relator beyond that occupation, and to be used in a different way from that, to which it is entitled as a mere street surface railroad, could not be authorized by the legislature without the consent of the local authorities. The substantial questions respecting the nature and extent of the changes sought to be effected in the construction and operation of the Third-Avenue Railroad by the introduction of cable traction have all, I think, been considered and passed upon by the court of appeals; and, whatever may have been my own views before that court disposed of those questions as to the right of the relator, and would be now but for that decision, I can find no way of escaping the conclusions to which it leads. So far as construction is concerned, this is a grant of new franchises under the guise of the regulation of existing franchises; and the statute authorizing it is obnoxious to the constitutional provision, as it imposes additional burdens on the streets without the consent of the authorities of the city; and I am, therefore, compelled to deny the application for the *mandamus*.