175 P.3d 700

**SOUTHWEST AIRLINES CO., a Texas corporation, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona; State of Arizona, Defendants/Appellees.**

**No. 1 CA–TX 07–0002.**

Court of Appeals of Arizona, Division 1, Department T.

Jan. 29, 2008.

Fennemore Craig, P.C. By Paul J. Mooney, Jim L. Wright, Deryck R. Lavelle, Phoenix, Attorneys for Plaintiff/Appellant.

Terry Goddard, Attorney General By Frank Boucek, III, Assistant Attorney General, Kenneth J. Love, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellees.

**OPINION**

JOHNSEN, Judge.

¶ 1 Southwest Airlines Co. ("Southwest") appeals the tax court's summary judgment upholding the inclusion in its personal property taxes of avionics software installed in

flight computers aboard its aircraft. Finding no legal error or genuine dispute of material fact, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 At issue is the tax treatment afforded of avionics application software used in Southwest's aircraft. The types of software vary with the model of the aircraft, but the various programs are used to assist navigation, autopilot/flight direction, situation awareness, air-ground data communications, auxiliary power unit control, engine control, data entry, flight data displays and flight guidance. The software is loaded into flight computers installed as original equipment on planes when Southwest purchases them. The invoices the aircraft manufacturer issues to Southwest do not separately state the price of the software programs.

¶ 3 In accordance with Arizona Revised Statutes ("A.R.S.") section 42–14254 (2006), the Arizona Department of Revenue (the "Department") values "flight property" for companies engaging in air commerce in Arizona.[1] Since the Legislature enacted the valuation statute at issue in 1996, the Department never has deducted the cost of avionics software from an aircraft's valuation.

¶ 4 During the 2004 tax year, the Department derived a full cash value of $155,319,100 for Southwest's flight property. Contending that its avionics software was not taxable, Southwest appealed to the State Board of Equalization (the "Board") pursuant to A.R.S. § 42–14005(1) (2006).[2] The Board declined to deduct the value of the software in setting the full cash value of Southwest's flight property. Southwest appealed to the tax court pursuant to A.R.S. §§ 42–16203 (Supp.2007), –16204 (2006), –16207 (2006) and –11005 (2006). It later amended its complaint to add a claim for the 2005 tax year and filed a separate appeal for the 2006 tax year. The parties ultimately stipulated to consolidate all three tax year appeals.

¶ 5 Southwest and the Department filed cross motions for summary judgment on whether the Department should have excluded the value of the software from the value of the company's personal property. The tax court granted the Department's motion and entered final judgment in favor of the Department. This appeal followed.

## DISCUSSION

### A. Standard of Review.

¶ 6 We review *de novo* the tax court's judgment. *Wilderness World, Inc. v. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). This case requires the interpretation of statutory provisions, which presents questions of law that we likewise review *de novo. Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). Our task is to "discern and give effect to legislative intent." *People's Choice TV Corp. v. City of Tucson,* 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002).

### B. The Department Correctly Interpreted and Applied A.R.S. § 42–14254.

¶ 7 The Arizona Constitution provides that all property not exempt by law may be taxed. Ariz. Const., art. 9, § 2(13); see also A.R.S. § 42–11002 (2006) ("All property in this state is subject to taxation except as provided in article IX, Constitution of Arizona, and article 3 of this chapter."). The Legislature specifically has exempted certain types of property from taxation. *See Airport Properties v. Maricopa County,* 195 Ariz. 89, 985 P.2d 574 (App.1999) (distinguishing between property exempted from taxation and property the Legislature has not chosen to tax). The enumerated exemptions, which are listed in A.R.S. §§ 42–11101 through –11133 (2006 & Supp.2007), refer neither to software in general nor to avionics software in particular. We strictly construe tax statutes against exemptions, *Ariz. Dep't of Revenue v. Raby,* 204 Ariz. 509, 511–12, ¶ 16, 65 P.3d 458, 460–61 (App.2003), and presume that

---

1. We cite the current versions of statutes throughout this decision because no changes material to this decision have since occurred.

2. Southwest also raised an issue about obsolescence, which ultimately was resolved and is not at issue in this appeal.

property is not exempted, *Hillman v. Flagstaff Cmty. Hosp.*, 123 Ariz. 124, 125–26, 598 P.2d 102, 103–04 (1979). Therefore, because avionics software is not among the enumerated categories of property exempt from taxation, we presume that avionics software is subject to taxation. *See id.* at 125, 598 P.2d at 103 ("It is the established rule in Arizona that property is not exempt from taxation unless expressly or unequivocally exempted by the Legislature.").

¶ 8 Given that avionics software is not exempt from taxation, the question is whether the Legislature has chosen to tax it. We conclude that by enacting a package of statutes providing broadly for the taxation of airplanes and all of their components, the Legislature intended to tax avionics software programs such as those at issue, which are installed on flight computers and are integral to the planes' airworthiness.

¶ 9 Article 6 of Chapter 14 of Title 42 is titled "Valuation and Taxation of Airline Companies." The statutes require that an airline operating within the state must file an annual report and that from those reports the Department annually shall determine the full cash value of each airline's "flight property" in use in the state. A.R.S. §§ 42–14253, –14254. More specifically, section 42–14254 provides in relevant part:

A. On or before August 31 the department shall determine the full cash value of all flight property that is operated in this state in air commerce by each airline company. The full cash value is the value determined as of January 1 of the valuation year.

B. The department shall:

1. Determine the valuation of flight property by fleet type.

2. Determine the valuation of each fleet type by the original cost less depreciation.

" 'Flight property' means all airline company aircraft of the types used in this state except aircraft that are permanently removed from operations." A.R.S. § 42–14251(6) (2006).

¶ 10 Examining these provisions, the tax court concluded:

Under the statute, the entire "aircraft" is taxable. The statute makes no distinction between tangible and intangible parts: if the software is part of the "aircraft," and only then, it is taxable.

¶ 11 In this appeal from the tax court's judgment, we must determine whether the Legislature has directed that a component such as software installed on an aircraft is, as the tax court found, "part of the aircraft." Section 42–14251(2) defines "aircraft" to mean "any device that is used or designed for navigation or flight through the air." The taxable property, therefore, is the "device" that flies—the airplane. We see nothing in the statutory scheme that instructs the taxing authority to tax some components of an airplane and not others.

¶ 12 Our conclusion is reinforced by the statute's requirement that the full cash value of flight property is to be determined based on its "original cost," which is defined as:

the capitalized acquisition cost to the original purchaser from the manufacturer of airframes and engines plus substantial modifications. If the acquisition cost cannot be determined, original cost means the manufacturer's original list price for the model, type and year plus substantial modifications.

A.R.S. § 42–14251(8). As noted, the software at issue was pre-installed on the airplanes when Southwest purchased them; the manufacturer's invoices did not separately itemize the software's price. Under the statute, therefore, the cost of the software was included within the "original cost" of the aircraft that the Legislature directed to be taxed.

¶ 13 Nevertheless, Southwest maintains that the statutory definition of "original cost" does not encompass avionics software, and argues that as a consequence, property tax may not be assessed against the software. The airline contends that avionics software is neither part of an aircraft's "airframe" or "engine" nor a "substantial modification" thereof. According to Southwest, therefore, because the definition of "original cost" does not include avionics software, the software cannot be taxed.

¶ 14 This argument fails to give effect to the very broad term "airframes." The statutes do not define the term, but, contrary to Southwest's contention, that does not mean that the statutory reference is ambiguous. *See Circle K Stores, Inc. v. Apache County,* 199 Ariz. 402, 408, ¶ 18, 18 P.3d 713, 719 (App.2001). To the contrary, in declining to provide a statutory definition, the Legislature generally intends to give a word its ordinary meaning. *Id.;* A.R.S. § 1–213 (2002) (words and phrases should be construed according to the common and approved use of the language).

¶ 15 The ordinary meaning of "airframe" is "[a]n aircraft without its power plant." *Webster's II New College Dictionary* 24 (2001). Therefore, we conclude that for this purpose an "airframe" includes every component of an airplane, with the exception of the plane's power plant. An airframe therefore includes the plane's wings, fuselage and tail—but it also includes the plane's interior lighting, seats, food and beverage preparation areas and lavatories. Likewise, it necessarily also includes avionics software such is at issue here, which is installed on aircraft computers at the time of purchase.[3]

¶ 16 Southwest's argument that the avionics software installed on its planes is not part of the planes' "airframes" is undermined by its concession on summary judgment that the software is included in the drawings and specifications that define the "Type Certificate," for purposes of Federal Aviation Administration ("FAA") regulations, for each of the aircraft at issue. The FAA approves the airworthiness of an aircraft design based on engineering and test data submitted by the manufacturer. The approval process is called "type certification." *See GATX/Airlog Co. v. United States,* 286 F.3d 1168, 1171 (9th Cir.2002) (explaining certification process). Once the FAA approves the type certification of a new craft, each plane manufactured to that design can be certified as airworthy. *See* 14 C.F.R. §§ 21.130 (2007) (manufacturer issues statement that plane conforms to "its type certificate"); 21.183(b) (2007) (airworthiness certificate issued upon presentation of statement of conformity if aircraft "conforms to the type design and is in condition for safe operation").

¶ 17 An airline may not operate an aircraft unless it "carries an appropriate current airworthiness certificate" and is in "airworthy condition" and meets the FAA's "airworthiness requirements." 14 C.F.R. § 121.153(a) (2007). Significantly, FAA regulations forbid any airplane from taking off unless its "[i]nstruments and equipment required to comply with airworthiness requirements under which the airplane is type certificated" "are in operable condition." 14 C.F.R. § 121.303(d) (2007). In sum, as explained by the Department's expert witness, the software at issue was part of the "type certification" of the aircraft, meaning that the planes could not be certified as "airworthy" without the software.[4]

¶ 18 A close review of the development of the tax statutes providing for the taxation of "flight property" supports the conclusion that the Legislature intended to tax each integral component of an airline's airplanes. In 1973, the Legislature defined "flight property" as "aircraft fully equipped for flight," and fur-

3. Our conclusion is consistent with the property-tax statute's legislative history. In addressing the "original cost" definition currently found in A.R.S. § 42–14251(8), an industry representative stated that "aside from the fact that engines are sometimes priced separately from the aircraft, the term 'air frame' is fairly inclusive." H.R. Forty Second Legislature, Second Regular Session, Minutes of House Ways and Means Committee meeting, at 18 (Feb. 13, 1996) (statement of Donald Frost, America West Airlines senior director of taxation, concerning H.B. 2501).

4. The regulations provide that pursuant to a Minimum Equipment List ("MEL") established for each model of aircraft, a plane may be permitted to fly with certain inoperative or missing equipment, but only within the conditions and limitations of the MEL. 14 C.F.R. § 121.628(a) (2007). Southwest argues that pursuant to the applicable MELs for its aircraft, it is not absolutely precluded from operating a plane without the subject software. Whether it temporarily may fly a plane pending repair or re-installation of the software at issue does not undermine the point that the software is so integral to the operation of the plane that it is part of the craft's "Type Certification" for purposes of FAA regulation. Indeed, Southwest does not assert that it does, in fact, regularly operate aircraft without the software at issue or when the software cannot be used.

ther provided that the taxation of flight property shall be determined based on its "full cash value." 1973 Ariz. Sess. Laws, ch. 123, § 47 (1st Reg.Sess.) (definition of "flight property"); 1973 Ariz. Sess. Laws, ch. 123, § 49 (1st Reg.Sess.) (levy based on full cash value). The definition of "flight property" was modified in 1981 to more closely resemble its current form ("all airline company aircraft of the types used in this state except aircraft permanently removed from operations"). *See* 1981 Ariz. Sess. Laws, ch. 25, § 1 (1st Reg.Sess.). We see nothing in the legislative history, however, that indicates that lawmakers intended by the modification to limit the components of an aircraft that are subject to taxation as "flight property."[5]

¶ 19 In 1996, the Legislature modified the manner in which flight property is assessed by directing the Department to calculate the "full cash value" of flight property by reference to the "original cost less depreciation" of aircraft, by fleet. 1996 Ariz. Sess. Laws, ch. 275, § 2 (enacting former A.R.S. § 42–704(B), now codified as A.R.S. § 42–14254(B)). At the same time, lawmakers defined "original cost" with reference to "airframes" as that term is now stated in A.R.S. § 42–14251(8).

¶ 20 We discern from the Legislature's various enactments its intent to impose a property tax on aircraft, including all of their original components, as well as all substantial modifications. The definitions of "flight property" and "original cost" are broad, and admit of no exception for any component parts that the airline or the plane's manufacturer might be able to cost out separately. To the contrary, that lawmakers defined "original cost" with reference to "the manufacturer's original list price for the model, type and year" of a craft demonstrates their intent that all component parts of the aircraft be taxed.[6]

### C.  The *Honeywell* Case Does Not Preclude Taxing the Software.

¶ 21 Southwest argues that its avionics software may not be taxed because it is intangible property not subject to tax under *Honeywell Information Systems, Inc. v. Maricopa County*, 118 Ariz. 171, 575 P.2d 801 (App.1977). For its part, the Department urges us to disregard *Honeywell* and hold that software is tangible property subject to tax. Although we reject Southwest's contention that *Honeywell* disposes of this case, we decline the Department's invitation to reject the case because we conclude that that case does not preclude taxation of Southwest's avionics software.

¶ 22 At issue in *Honeywell* were computer systems the company "bundled" with other services for lease to customers. The taxpayer in that case protested that its computer systems were assessed at a higher full cash value than those of companies that leased their systems in "unbundled" fashion, that is, separately leasing computer hardware from what the court termed "software." *Id.* at 172–73, 575 P.2d at 802–03.

¶ 23 Our analysis in that case began with the unassailable proposition that under Arizona law, " 'personal property' is defined as 'property of every kind, both tangible and intangible, not included in the term real estate.' " *Id.* at 173, 575 P.2d at 803 (quoting A.R.S. § 42–201 (now A.R.S. § 42–11001(8))). Notwithstanding that general principle, however, we noted that "while Arizona statutes have long authorized taxation of intangibles, our cases have held that intangibles may not be taxed because the legislature has failed to provide a means of equalization for or collection of a tax against intangibles." *Id.* (citations omitted). We then observed that "ev-

---

**5.**  The 1981 amendments fundamentally altered the taxation of air property by providing that planes be taxed based in part on "ground time" within the state. The express exclusion of "aircraft permanently removed from operations" may have reflected the Legislature's attempt to more precisely capture the value of aircraft actually in use in the state. *See* 1981 Ariz. Sess. Laws, ch. 25, §§ 1–2 (1st Reg.Sess.).

**6.**  This is not to say that the avionics software at issue would not be subject to taxation if it were invoiced separately. Given Southwest's concession that the software was part of the planes' "type certification," it would be exalting form over substance to exclude the value of the software from taxation if the price of the software were to be "unbundled" from the price of the aircraft on which the software is installed.

ery jurisdiction which has considered" the issue had agreed that software is intangible. *Id.* (citing three cases).[7] Without further analysis, we concluded that "[t]here is little doubt that computer software is intangible property and, as such, should be excluded in determining the value of tangible computer equipment." *Id.*

¶ 24 No Arizona court since *Honeywell* has addressed whether software may be taxed. Of course, since we issued our *Honeywell* decision 30 years ago, software programs have advanced in complexity and numbers to the extent that they pervade virtually all aspects of our lives. Not surprisingly, much has been written, in the scholarly literature and in decisions in other jurisdictions, about whether software should be treated as tangible or intangible property for tax purposes. Although the older cases generally seemed to hold that software programs were intangibles not subject to tax, *see, e.g., District of Columbia v. Universal Computer Associates, Inc.,* 465 F.2d 615 (D.C.Cir.1972); *Northeast Datacom, Inc. v. City of Wallingford,* 212 Conn. 639, 563 A.2d 688 (1989); *Greyhound Computer Corp. v. State Department of Assessments & Taxation,* 271 Md. 674, 320 A.2d 52 (1974); *Dallas Central Appraisal District v. Tech Data Corp.,* 930 S.W.2d 119 (Tex. App.1996); *Janesville Data Center, Inc. v. Wisconsin Department of Revenue,* 84 Wis.2d 341, 267 N.W.2d 656 (1978), more recent authorities conclude that software is tangible and subject to tax, *see, e.g., Comshare, Inc. v. United States,* 27 F.3d 1142 (6th Cir.1994) (income tax credit); *Wal–Mart Stores, Inc. v. City of Mobile,* 696 So.2d 290 (Ala.1996) (sales tax); *Andrew Jergens Co. v. Wilkins,* 109 Ohio St.3d 396, 848 N.E.2d 499 (2006) (property tax); Ruhama Dankner Goldman, Comment, *From Gaius to Gates: Can Civilian Concepts Survive the Age of Technology?,* 42 Loy. L.Rev. 147, 158 (1996) ("the trend in classification of computer soft-

ware has been to classify it as tangible personal property").

¶ 25 For two reasons, however, we are not required to determine whether we agree with *Honeywell's* characterization of "software" as intangible property not subject to tax.

¶ 26 First, we are not persuaded that our decision in *Honeywell* is the authoritative mandate about computer software programs that Southwest asserts (and that the Department urges us to abandon). The dispute in *Honeywell* was not so much about software programs such as are at issue here but instead about systems support engineering services, classroom education services and programming services that Honeywell leased to customers with its computer systems. 118 Ariz. at 174, 575 P.2d at 804. In arguing that the county had overvalued its computer systems, Honeywell offered detailed evidence of the value of the services it had bundled with the systems by calculating the "man-hours of systems support engineering services" and "student hours of classroom educational services" that it provided to its lessees without separate charge. *Id.* at 174–75, 575 P.2d at 804–05. The company calculated the value of those services as 24 percent of the overall catalog list price of the mainframe computer systems subject to its leases. In reversing the judgment of the tax court, we held that Honeywell had proven by that evidence that the valuation of the equipment was excessive "and that the same evidence would also support a determination of the true cash value of the equipment." *Id.* at 175, 575 P.2d at 805.

¶ 27 Significantly, however, although the court used the term "software" to describe the services that Honeywell bundled with its computer hardware, our decision referred to *software programs* only briefly and generally and instead focused, as described above, on the value of the computer consulting *services* that Honeywell bundled with its computer systems.[8] For that reason, we are reluctant

---

7. *District of Columbia v. Universal Computer Assocs., Inc.,* 465 F.2d 615 (D.C.Cir.1972); *County of Sacramento v. Assessment Appeals Bd.,* 32 Cal. App.3d 654, 108 Cal.Rptr. 434 (1973); and *Greyhound Computer Corp. v. State Dep't of Assessments & Taxation,* 271 Md. 674, 320 A.2d 52 (1974).

8. The decision referred to "computer application programming," 118 Ariz. at 174, 575 P.2d at 804, but the appendix to the decision indicated that that term referred to "[t]he writing (coding) and testing of customized programs [as] a service, requiring the development or ascertainment of information, and the evaluation of data, in

to read into the *Honeywell* decision a pronouncement that any and all software *programs* (as opposed to computer consulting services) are intangible and therefore not subject to personal property tax.

¶ 28 Second, even if we were to understand *Honeywell* to say that all computer software programs are intangible, the principles of that case do not dissuade us from concluding that the avionics software at issue is taxable. We did not say in *Honeywell* that intangibles may never be taxed. Instead, we explained, "intangibles may not be taxed because the legislature has failed to provide a means of equalization for or collection of a tax against intangibles." 118 Ariz. at 173, 575 P.2d at 803 (citing *Brophy v. Powell*, 58 Ariz. 543, 121 P.2d 647 (1942); *Maricopa County v. Trustees of Ariz. Lodge No. 2*, 52 Ariz. 329, 80 P.2d 955 (1938); and *State Tax Comm'n v. Shattuck*, 44 Ariz. 379, 38 P.2d 631 (1934)).

¶ 29 We do not doubt that in 1978, when *Honeywell* was issued, it was true that the Legislature had not addressed equalization or collection of a personal property tax on application software such as at issue in that case. But the same cannot be said today about the avionics software in Southwest's planes. In contrast to the tax structure in place in 1978, a 1997 amendment to the air-property tax scheme specified that the tax "[i]s a debt of the airline company" and "[i]s a lien" against both the assessed flight property and against all other property of the taxpayer. A.R.S. § 42–14257 (2006). These provisions mitigate the collection concerns raised by the Arizona Supreme Court in *Arizona Lodge* and by this court in *Honeywell*.

¶ 30 Moreover, the Legislature also has enacted a procedural mechanism for equalizing such taxes. When we decided *Honeywell* in 1978, we cited *Shattuck*, in which the Arizona Supreme Court had invalidated the Intangible Property Tax Act because there was no judicial review allowing for equalization of tax levied under the Act. *Shattuck*, 44 Ariz. at 407–08, 38 P.2d at 642. Under the

current property tax scheme for flight property, however, Southwest has recourse under A.R.S. § 42–14002(B) (2006) to schedule an informal conference or to appeal a valuation to the Department (A.R.S. § 42–14004 (2006)), the State Board of Equalization (A.R.S. § 42–14005(1) (2006)), and the superior court (A.R.S. §§ 42–14005(2); 42–16204 (2006)). A.R.S. § 42–14256 (2006). Therefore, the tax is not invalid on this basis. *See Brophy*, 58 Ariz. at 554–57, 121 P.2d at 653–54 (when recourse is available, the tax is not invalid).

¶ 31 In summary, even assuming that the avionics software is "intangible" property, the problems that *Honeywell* and *Shattuck* identified with taxing intangible property do not prevent taxation of avionics software. Moreover, we see in the property-tax statutes the Legislature's intent to tax all components of an aircraft, regardless whether, prior to its installation on the craft, any such component otherwise may be characterized as an "intangible." Therefore, we can give effect to the statute by upholding the tax.

¶ 32 We must note, however, that, as the tax court noted, the software programs at issue are designed to fulfill specific functions in the flight computers into which they are installed. Our holding accordingly is limited to this variety of software; we do not hold that all software, regardless of use, necessarily is subject to taxation. Nor do we decide today whether computer software as a general matter is tangible or intangible for tax purposes.[9]

### D. Taxing Avionics Software Is Not Inconsistent with the *Airport Properties* Case.

¶ 33 Southwest further argues that we must find the applications software not taxable in light of *Airport Properties v. Maricopa County*, 195 Ariz. 89, 985 P.2d 574 (App. 1999). We disagree.

---

addition to other development skills." *Id.* at 180; 575 P.2d at 810.

**9.** Likewise, we do not express an opinion about other issues the parties raise on appeal such as whether operating software as a general matter

should be treated differently, for tax purposes, than applications software, or whether "canned" software generally should be treated differently than "custom" software for tax purposes.

¶ 34 In *Airport Properties*, lessees challenged the county's authority to tax their leaseholds following the repeal of the State's possessory-interest taxing system. *Id.* at 90–91, ¶ 1, 985 P.2d at 575–76. In rejecting the county's argument, this court emphasized that even though Arizona Constitution, Article 9, Section 2(13), provides that "[a]ll property in the state not exempt [by law] shall be subject to taxation," tax may not be imposed on property unless the Legislature exercises its power to do so. *Id.* at 103, ¶¶ 52–56, 985 P.2d at 588. We held that the lessees' possessory interests in the leases were not taxable because by repealing the possessory-interest statute, the Legislature had demonstrated its intent that such interests not be taxed. *Id.* at 104, ¶¶ 57–60, 985 P.2d at 589.

¶ 35 *Airport Properties* addressed a tax that had been expressly repealed by the Legislature; by contrast, we deal here with a system of taxing statutes that defines in the broadest terms the air property to be taxed. Moreover, we reject Southwest's argument that *Airport Properties* stands for the proposition that intangible property is not taxable. At issue in that case were leasehold interests, a category of stand-alone assets that have value independent of any other variety of property. For that reason, the intangible property interests at issue in that case were different in kind from the software at issue here, which has value only insofar as it is installed on the aircraft for which it is designed. We see no relevant legal similarities between the two.

¶ 36 Nor can Southwest point to any longstanding practice of administrative forebearance in this case; to the contrary, the Department has taxed avionics software as personal property since the enactment of the new statute in 1996. *See Police Pension Bd. of Phoenix v. Warren*, 97 Ariz. 180, 186, 398 P.2d 892, 895 (1965) (giving great weight to relevant agency's interpretation); *Sanderson Lincoln Mercury, Inc. v. Ford Motor Co.*, 205 Ariz. 202, 205, ¶ 8, 68 P.3d 428, 431 (App.2003) (same).[10] Thus, Southwest can

offer no evidence of a vested right to a deduction of software cost from the original cost calculation of air property.

¶ 37 Finally, we note that the Legislature enacted its definition of original cost in 1996, years after *Honeywell*. We presume lawmakers were aware of the existing law when they enacted an all-encompassing definition of original cost together with a mechanism to tax all components of the aircraft. *See Wareing v. Falk*, 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App.1995) (courts presume that the Legislature is aware of existing law when it enacts a statute). The Legislature nevertheless decided not to exempt avionics software from its "manufacturer's original list price" for aircraft and enacted a corresponding scheme for equalization and collection. *See* A.R.S. § 42–14251.

¶ 38 We reject Southwest's argument that the Legislature must not have intended to tax avionics software because the provisions defining "flight property" or directing how flight property is to be valued do not specifically refer to "intangibles" or software. Southwest notes that a former version of A.R.S. § 42–14403, pertaining to the taxation of telecommunications companies, specifically directed the Department to determine the "valuation of all property, franchises and intangible values of telecommunications companies." A.R.S. § 42–793 (1988).[11] Southwest argues that the Legislature's specific reference to "intangible values" in the telecommunications statute, combined with the Legislature's failure to refer to "intangibles" or "software" in the flight-property statutes, demonstrates that lawmakers did not intend to include software in the air-property statutes. We do not find this argument compelling, given the wide variety of "intangible values," aside from computer software, that the Legislature might have intended to tax in the possession of telecommunications companies. Moreover, as noted above, we understand that by adopting the broad term "airframe" to describe how "flight property" is to

---

10. The Arizona Legislature made its definition of "original cost" retroactive to taxable years commencing from and after December 31, 1995. 1996 Ariz. Sess. Laws, ch. 275, § 3 (2nd Reg. Sess.).

11. The reference to "intangible values" since has been deleted from the statute. A.R.S. § 42–14403 (Supp.2007).

be valued, the Legislature intended to tax all components of an aircraft, including its computer software.

### E. The Facts Material to Entry of Judgment in the Department's Favor Were Undisputed.

¶ 39 Finally, Southwest complains that in entering summary judgment the tax court relied upon facts not in the record and thereby misapplied the doctrine of judicial notice. However, the material facts discussed above and on which we rely either were undisputed or conceded by Southwest during the summary judgment briefing. This evidence includes the uncontradicted affidavit of the Department's expert, which stated that the avionics software was part of the type certification of the aircraft and that the FAA regulations generally require components of type design to be present and in working order to maintain airworthiness. The same evidence provided the basis for the tax court's conclusion that it was not likely that a commercial aircraft would be sold or accepted without the software.[12]

### CONCLUSION

¶ 40 For the reasons stated above, we affirm the summary judgment in favor of the Arizona Department of Revenue.

CONCURRING: JON W. THOMPSON, Judge, and SUSAN A. EHRLICH, Judge.

---

**12.** Southwest complains about the tax court's conclusions as to other facts, but we need not address the record support for those findings because they are immaterial to our decision to affirm the tax court's judgment. For the same reason, we decline Southwest's request to remand this matter so that the tax court can re-solve what Southwest contends are disputed issues of material fact about whether the aircraft as a practical matter could function without the various software programs at issue.