IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAN DIEGO GAS & ELECTRIC COMPANY, *Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, et al., *Defendants/Appellants*.

No. 1 CA-TX 21-0008
FILED 10-24-2023

Appeal from the Arizona Tax Court
No. TX2019-001758
The Honorable Danielle J. Viola, Judge

**VACATED AND REMANDED**

COUNSEL

Mooney, Wright, Moore & Wilhoit, PLLC, Mesa
By Paul J. Mooney
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries, Lisa A. Neuville
*Counsel for Defendants/Appellants*

---

**OPINION**

---

Judge D. Steven Williams delivered the Court's opinion, in which Presiding Judge Cynthia J. Bailey and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1 Arizona's property tax statutes require the Arizona Department of Revenue ("the Department") to annually assess taxes based on the full cash value of all property owned by public utilities. A.R.S. §§ 42-14151(A), -14153(A). In this appeal, we analyze how the future cost of removing electric transmission and distribution property factors into the full cash value assigned to such property, specifically, whether that future cost can be included as a component of depreciation under A.R.S. § 42-14154(B). Subsection (F) of that statute requires us to construe the statutory phrase "[t]he related accumulated provision for depreciation" in accordance with the Federal Energy Regulatory Commission's ("FERC") Uniform System of Accounts ("USOA"). Doing so, we hold that accumulated depreciation under Arizona's valuation formula for electric transmission and distribution property includes the future cost of removal. We further hold, however, that accumulated depreciation neither reduces the full cash value of the related asset to a negative number nor decreases the full cash value of unrelated property. Accordingly, we vacate the tax court's summary judgment in favor of San Diego Gas & Electric Company ("SDG&E") and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶2 SDG&E owns an interstate electric transmission line that runs from the Palo Verde Nuclear Generating Station in western Maricopa County, through Yuma County, and into California. In compliance with statutory and administrative regulations governing public utilities, SDG&E files an annual valuation report with the Department and maintains its books and records in conformity with the USOA. *See* A.R.S. § 42-14152(A); 18 C.F.R. § 141.1; A.A.C. R14-2-212(G)(1)-(2).

¶3 In its 2020 annual valuation filing, SDG&E reported an original plant in service cost of $48,817,396 (after subtracting land rights), accumulated depreciation of $51,446,397 (after subtracting amortization for

land rights), and construction work in progress of $3,648,000.[1] These amounts yielded a net plant in service full cash valuation of negative $2,629,001 and a net property full cash valuation of approximately $1,020,000. As part of its accumulated depreciation calculation, SDG&E included the future cost of removal for its electric transmission and distribution property. The Department accepted SDG&E's figures for original plant in service and construction work in progress but rejected SDG&E's inclusion of future removal costs in its accumulated depreciation calculation. Excluding SDG&E's reported future costs of removal from its calculation, the Department initially valued SDG&E's property at $12,302,121, representing $48,817,396 original plant in service cost, less $40,163,750 in accumulated depreciation, for a plant in service full cash value of $8,653,646 plus a construction work in progress amount of $3,648,475.

¶4        In response, SDG&E filed this action challenging the Department's full cash valuation as excessive. SDG&E then moved for summary judgment, seeking a net property full cash valuation of $1,019,474, which used a negative plant in service full cash value (after depreciation) as an offset against construction work in progress on an unrelated asset. To support its full cash valuation, SDG&E pointed to FERC's reporting requirements and argued that Arizona's statutory formula for calculating the full cash value of electric transmission and distribution property necessarily includes the future cost of removal as a component of accumulated depreciation.

¶5        The Department cross-moved for summary judgment, asserting that accumulated depreciation does not include the future cost of removal under Arizona's statutory full cash valuation formula. Applying a straight line depreciation method, the Department sought a revised valuation of $22,101,000, adopting SDG&E's figures for the original plant in service cost and construction work in progress, but calculating a further reduction in accumulated depreciation.

¶6        Following briefing and argument, the tax court granted summary judgment in favor of SDG&E. Upon denying the Department's motion to reconsider, the court entered final judgment in SDG&E's favor.

---

[1] SDG&E reported actual construction work in progress of $7,296,949, but that amount was reduced by fifty percent according to statute and then rounded down by the Department. *See* A.R.S. § 42-14154(C).

¶7        The Department timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶8        The Department challenges the tax court's ruling that accumulated depreciation under Arizona's statutory full cash valuation formula includes the future cost of removing electric transmission and distribution property. The Department alternatively argues that if accumulated depreciation encompasses the cost of removal, such accumulated depreciation may not reduce the full cash value of a plant in service to a negative number or offset the valuation of unrelated construction work in progress.

¶9        We review de novo the tax court's ruling on cross-motions for summary judgment. *See Wilderness World, Inc. v. Dep't of Revenue State of Ariz.*, 182 Ariz. 196, 198 (1995). This case involves an issue of statutory interpretation, which we also review de novo. *See Sw. Airlines Co. v. Ariz. Dep't of Revenue*, 217 Ariz. 451, 452, ¶ 6 (App. 2008).

¶10        Under A.R.S. § 42-14154(B), the Department calculates the full cash value of a plant in service by determining the "original plant in service cost" and then subtracting "[t]he related accumulated provision for depreciation." The statute defines the "original plant in service cost" as "the actual cost of acquiring or constructing property including additions, retirements, adjustments and transfers." A.R.S. § 42-14154(G)(7). Notably, the statute does not define "[t]he related accumulated provision for depreciation," but it includes the following provisions:

> F. All terms and applications of terms shall be interpreted according to the federal energy regulatory commission uniform system of accounts for electric and gas utilities in effect on January 1, 1989.
>
> G. For the purposes of this section, unless the context otherwise requires:
>
> . . . .
>
> 2. "Depreciation" means straight line depreciation over the useful life of the item of property.

A.R.S. § 42-14154(F), (G)(2).

¶11 Pointing to A.R.S. § 42-14154(G)(2)'s definition of "depreciation"—straight line depreciation over the useful life of the property—the Department contends that "[t]he related accumulated provision for depreciation" does not include the unreported, prospective "cost of removal."[2] SDG&E counters that absent a statutory definition for "[t]he related accumulated provision for depreciation," A.R.S. § 42-14154(F) requires that the term be interpreted according to the FERC's USOA, which expressly includes the "cost of removal" as part of accumulated depreciation.

¶12 In interpreting a statute, our goal is to discern and "effectuate the legislature's intent." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021). "Absent ambiguity or absurdity, our inquiry begins and ends with the plain meaning of the legislature's chosen words, read within the overall statutory context." *Id.* (internal quotation omitted). We are also guided by the principle that tax statutes must be interpreted "strictly against the state," with "any ambiguities . . . resolved in favor of the taxpayer." *Wilderness World*, 182 Ariz. at 199; *see also State ex rel. Ariz. Dept. of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10 (2004) (providing statutes imposing taxes are to be liberally construed "in favor of taxpayers and against the government").

¶13 Section 42-14154(F) expressly requires that "all of [the statute's] terms and applications be interpreted in accordance with the FERC accounting rules." *Ariz. Dep't of Revenue v. Salt River Project Agric. Improvement & Power Dist.*, 212 Ariz. 35, 40, ¶ 19 (App. 2006). This broad legislative mandate "does not state that the FERC USOA is to be used only to resolve statutory ambiguities; rather, . . . the statute requires that all of its terms and applications be interpreted in accordance with the FERC accounting rules." *Id.* at 39-40, ¶ 19.

¶14 In *Salt River Project*, we analyzed the meaning of the term "original plant in service cost" under A.R.S. § 42-14154(G)(7). *Id.* at 39-41, ¶¶ 17-22. To do so, we first considered the meaning of the term "actual cost," as used within the statutory definition. *Id.*; A.R.S. § 42-14154(G)(7) (defining "original plant in service cost" as "the actual cost of acquiring or constructing property including additions, retirements, adjustments and transfers"). Neither the Arizona statute nor the FERC USOA defined "actual cost." *Salt River Project*, 212 Ariz. at 39-40, ¶¶ 19-20. And, although

---

[2] The parties do not dispute that SDG&E's reported original plant in service cost did not encompass future removal costs.

the FERC USOA defined "cost," we recognized that "cost" and "actual cost" are distinct terms. *Id.* at 40, ¶ 20.

¶15  Here, the Department urges us to conclude there is no difference between the terms "depreciation" and "[t]he related accumulated provision for depreciation." But if the legislature had intended to limit "[t]he related accumulated provision for depreciation" to "depreciation," it could have done so. Rather than subtract "straight line depreciation over the useful life of the property" or simply "depreciation" from the original plant in service cost, the statutory formula subtracts "[t]he related accumulated provision for depreciation" from the original plant in service cost to determine the full cash value of the plant in service—without defining the phrase.

¶16  "Our legislature has expressly adopted a statutory method for the valuation of utilities in Arizona that incorporates the FERC USOA." *Id.* at 41, ¶ 25; *see also* A.R.S. § 42-14154(F); A.A.C. R14-2-212(G)(1)-(2) (providing for the keeping of accounts and records to reflect the cost of the utility's properties in conformity with the FERC USOA). Guided by the "presumption that what the [l]egislature means, it will say," we decline to ascribe the statutory term a definition that differs from that in the FERC USOA. *See Padilla v. Indus. Comm'n*, 113 Ariz. 104, 106 (1976); *see also Salt River Project*, 212 Ariz. at 39-40, ¶ 19 (providing that <u>all</u> terms, including those unambiguous, must be interpreted in accordance with the FERC accounting rules).

¶17  Under FERC USOA Account No. 108, Accumulated Provision for Depreciation of Service Company Property, the "accumulated provision for depreciation" expressly includes the "cost of removal." 18 C.F.R. § 367.1080. Likewise, FERC Order No. 631 provides: "removal costs . . . are included as a component of the depreciation expense and recorded in accumulated depreciation." 68 Fed. Reg. 19610-01 (to be codified at 18 C.F.R. 35, 101, 154, 201, 346, 352). As defined by FERC USOA Account No. 101(a)(10), the "cost of removal" is "the cost of demolishing, dismantling, tearing down or otherwise removing service property, including the cost of transportation and handling incidental thereto." 18 C.F.R. § 367.1(a)(13).

¶18  The Arizona legislature "knows how to exclude items from the sweep of the FERC if it chooses to do so." *Salt River Project*, 212 Ariz. at 41, ¶ 23 n.9. In fact, the legislature expressly excluded land rights from the "original plant in service cost," making those costs non-depreciable under the statute, even though land rights are part of accumulated depreciation under the FERC USOA. *See* A.R.S. § 42-14154(G)(8). Because the legislature

could have prescribed an exception to the FERC rules for the cost of removal but chose not to do so, and given our statutory mandate to interpret terms according to the FERC USOA, we conclude that accumulated depreciation includes the cost of removal under A.R.S. § 42-14154.

¶19      Having so found, we turn to the Department's secondary, alternative arguments that accumulated depreciation neither reduces the full cash value of a plant in service to a negative number nor offsets the value of unrelated construction work in progress. The Department characterizes the negative full cash valuation of a plant in service under Arizona's statutory formula as "absurd," "ludicrous," and legally "impossibl[e]." For its part, SDG&E does not argue that Arizona's statutory full cash valuation formula contemplates the possibility of a negative taxable basis. Instead, SDG&E notes that the value of its construction work in progress outweighed the negative full cash value of its plant in service, resulting in a net positive full cash property valuation.

¶20      "In considering two plausible interpretations of a statute, we will not credit one that leads to absurd results." *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 13, ¶ 28 (2022). A statutory interpretation is absurd "if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of [persons] with ordinary intelligence and discretion." *Perini Land and Dev. Co. v. Pima County*, 170 Ariz. 380, 383 (1992) (citation omitted).

¶21      Nothing in the plain language of A.R.S. § 42-14154 or the related valuation statutes, A.R.S. §§ 42-14151 to -14153, expressly provides for or precludes a negative full cash valuation of a plant in service. But applying a "sensible construction to avoid absurd results," *Mountainside MAR, LLC v. City of Flagstaff*, 253 Ariz. 448, 450, ¶ 9 (App. 2022), we are not persuaded that the legislature intended to permit a negative full cash valuation for a plant in service, and therefore hold that accumulated depreciation may not reduce the full cash value of a plant in service to a negative number. That a net negative full cash property valuation was avoided in this case does not render SDG&E's proposed construction of accumulated depreciation (and corresponding calculation of the net plant in service's full cash value) reasonable.

¶22      Furthermore, applying the plain and unambiguous language of A.R.S. § 42-14154(B), we hold that accumulated depreciation may reduce only the "related" original plant in service cost. In other words, the "related" accumulated depreciation that A.R.S. § 42-14154(B) expressly

states shall reduce the original plant in service cost may not reduce the value of construction work in progress, which is separately calculated under subsection (C) as "fifty per cent of the amount spent and entered on the taxpayer's accounting records as of December 31 of the preceding calendar year." Apart from a plain reading of the statute, this construction is consistent with a distinct but analogous FERC USOA provision, which in explaining the accounting for asset retirement obligations, states that the "cost must be depreciated over the useful life of the *related asset that gives rise to the obligations*." 18 C.F.R. § 367.22(b) (emphasis added). Under A.R.S. § 42-14154(B), accumulated depreciation represents the expensing of the plant in service costs over time; therefore, its application is limited to reducing the valuation of those "related" costs.

**¶23**        In sum, we hold that accumulated depreciation under A.R.S. § 42-14154 encompasses the future costs of removing electric transmission and distribution property. We further hold that such accumulated depreciation cannot reduce the full cash value of a plant in service to a negative number or offset the value of unrelated property. Accordingly, we vacate the tax court's summary judgment in favor of SDG&E.[3]

## CONCLUSION

**¶24**        For the foregoing reasons, we vacate the summary judgment in SDG&E's favor and remand the matter to the tax court. SDG&E has requested an award of attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-348(B) ("[A] court may award fees and other expenses to any party . . . that prevails by an adjudication on the merits in an action by the party against this state . . . challenging the assessment . . . of taxes."). Although we vacate the summary judgment for SDG&E because accumulated depreciation may not reduce the full cash value of a plant in service to a negative number or be used to offset the value of unrelated property, SDG&E prevailed on the inclusion of the cost of removal in the calculation of accumulated depreciation. In our discretion,

---

[3] The Department also argues for the first time on appeal that permitting a negative full cash property valuation "violates the Arizona Constitution's Exemptions Clause, which provides that all property in the state not exempt from taxation under the Federal and Arizona Constitutions shall be subject to taxation." Ariz. Const. art. IX, § 2. Given our resolution of the other issues in this matter, and in our discretion, we decline to address this contention. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived.").

we award SDG&E a portion of its reasonable attorneys' fees and costs incurred on appeal, contingent upon its compliance with ARCAP 21.

