IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

AGUA CALIENTE SOLAR, LLC, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, et al., *Defendants/Appellees*.

No. 1 CA-TX 22-0007
FILED 05-14-2024

---

Appeal from the Arizona Tax Court
No.  TX 2020-000018, TX2020-000773, TX2020-000987
The Honorable Danielle J. Viola, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Frazer, Ryan, Goldberg & Arnold, L.L.P., Phoenix
By Douglas S. John, James M. Cool
*Co-Counsel for Plaintiff/Appellant*

Dickinson Wright, PLC, Phoenix
By Bennett Evan Cooper
*Co-Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kimberly Cygan, Jerry A. Fries
*Counsel for Defendants/Appellees*

<hr>

**OPINION**

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge D. Steven Williams and Judge Angela K. Paton joined.

<hr>

**P E R K I N S**, Judge:

¶1        The issue before us is whether a claimed investment tax credit deferred as a tax asset has "value" for purposes of determining the taxable original cost of renewable energy equipment under A.R.S. § 42-14155. We hold that the "value" of an investment tax credit under Section 42-14155 is the full amount of the credit, set when the applicable equipment is placed in service and the credit is claimed. Because the Arizona Department of Revenue ("the Department") improperly excluded a deferred investment tax credit from its valuation calculations, we reverse the tax court's grant of summary judgment in the Department's favor, grant summary judgment in favor of Agua Caliente Solar, LLC ("Agua Caliente"), and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        The relevant facts are not disputed. Agua Caliente operates a solar-electricity power-generation facility ("the facility") that uses renewable energy equipment. *See* A.R.S. § 42-14155(D)(5) (defining "[r]enewable energy and storage equipment" as "property . . . used or useful for generating, storing, transmitting or distributing electric power, energy or fuel derived from solar, wind or other nonpetroleum renewable sources not intended for self-consumption, including materials and supplies and construction work in progress"). Agua Caliente built the facility and placed it in service in 2012. *See* 26 C.F.R. § 1.46-3(d)(ii) (defining "placed in service" as the "taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function").

¶3        From 2012 to 2015, Agua Caliente was owned by AC Solar Holdings, LLC ("AC Solar"), which was a partnership between two corporations, Berkshire Hathaway, Inc. ("Berkshire Hathaway") and NRG Energy, Inc. ("NRG Energy"). During that time, Agua Caliente received investment tax credits in the amount of $465,454,649 from the federal government for building the facility. AC Solar claimed the investment tax

credits which it then "passed through" to Berkshire Hathaway and NRG Energy "based on their respective ownership interests" in AC Solar. Berkshire Hathaway used its share of the investment tax credits to reduce its corporate tax liability between 2012 and 2015. But NRG Energy, having no taxable income against which to use the credit, carried forward its share of the investment tax credits as a deferred corporate tax asset. *See* 26 U.S.C. § 39.

¶4        In its 2020 annual valuation report, Agua Caliente reported the investment tax credits to the Department for the first time. The Department initially valued Agua Caliente's renewable energy equipment without including any of the investment tax credits. Agua Caliente challenged that valuation, arguing the Department should have included the tax credits claimed by AC Solar. The Department then revised its valuation to include Berkshire Hathaway's share of the investment tax credits but refused to include NRG Energy's share.

¶5        After revising the 2020 valuation of Agua Caliente's equipment, the Department also amended its valuation of the equipment for tax years 2016 through 2019 to account for Berkshire Hathaway's share of the investment tax credits. Dissatisfied with the Department's refusal to recognize NRG Energy's share of the investment tax credits, Agua Caliente appealed the Department's valuations for tax years 2016 through 2019 (Case No. TX 2020-000773), 2020 (Case No. TX 2020-000018), and 2021 (Case No. TX 2020-00987).

¶6        On cross-motions for summary judgment in those consolidated appeals, the parties disputed how the statutory formula for valuing renewable energy equipment accounts for investment tax credits. While Agua Caliente argued that, by statute, investment tax credits are recognized as soon as they are claimed, the Department maintained that the statutory formula does not recognize investment tax credits until they are used to reduce income tax liability.

¶7        The tax court granted summary judgment in favor of the Department and denied Agua Caliente's motion. After entry of final judgment, Agua Caliente timely appealed, and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

¶8        Agua Caliente contends that the tax court misconstrued the statutory valuation formula when it upheld the Department's exclusion of

NRG Energy's proportionate share of the investment tax credits in the revised valuation of Agua Caliente's renewable energy equipment.

¶9　　　　We review *de novo* the tax court's rulings on the parties' cross-motions for summary judgment. *See Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182 Ariz. 196, 198 (1995). We also review the tax court's interpretation of the relevant statutes *de novo. Sw. Airlines Co. v. Ariz. Dep't of Revenue*, 217 Ariz. 451, 452, ¶ 6 (App. 2008).

## I.　　In context, the unambiguous term "value" means the full amount of a claimed investment tax credit, even before its use.

¶10　　　　Arizona's property tax system tasks the Department with the valuation of renewable energy equipment. A.R.S. § 42-14155(A). Under the statutory formula, the Department calculates the "taxable original cost" of the equipment by subtracting "the *value* of any investment tax credits . . . applicable to the taxable renewable energy and storage equipment" from the equipment's "original cost." A.R.S. § 42-14155(B), (D)(6) (emphasis added) (defining "original cost" as actual construction and acquisition costs). The Department then deducts any applicable depreciation from the taxable original cost and multiplies the remaining, depreciated cost by twenty percent, yielding the equipment's full cash value. A.R.S. § 42-14155(B).

¶11　　　　To determine whether the statutory formula compels the Department to recognize deferred investment tax credits when calculating renewable energy equipment's taxable original cost, we must interpret the phrase "reduced by the value of any investment tax credits . . . applicable to the . . . equipment." Under Agua Caliente's proposed construction, the amount of any investment tax credit is subtracted once the owner places the equipment in service and claims the credit associated with that equipment. The Department maintains that "value" equals the economic benefit that an equipment owner derives by using the credit to reduce income-tax liability. Under the Department's interpretation, a claimed investment tax credit is not factored into the valuation of renewable energy equipment until the credit is used to offset a federal tax liability.

¶12　　　　"Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so . . . according to the plain meaning of the words in their broader statutory context." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286, ¶ 31 (2023). "Absent ambiguity or absurdity, our inquiry begins and ends with the plain meaning of the legislature's chosen words." *Welch v. Cochise Cnty. Bd. of*

*Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021) (cleaned up). A statute is not ambiguous merely because both parties present *plausible* competing definitions of a word in the statute. *See Planned Parenthood Ariz., Inc. v. Mayes*, ___ Ariz. ___, ___, ¶ 17, 545 P.3d 892, 898, ¶ 17 (2024) ("A statute is not ambiguous merely because the parties disagree about its meaning."); *see also Honigman v. City of Detroit*, 505 Mich. 284, 307 (2020); Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2163 (2016) (reviewing Robert A. Katzman, *Judging Statutes* (2014)) (courts should "find the best reading of the statute by interpreting the words of the statute, taking account of the context of the whole statute"). Rather, a statute is ambiguous if it is susceptible to "multiple *reasonable* interpretations . . . after examining the statute's text as a whole." *Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 584, ¶ 6 (App. 2021) (emphasis added).

¶13 Arizona's property tax statutes do not define "value," but its meaning is clear when considering the plain meaning of the relevant text. *See* A.R.S. § 42-14155. Both parties advance plausible interpretations of the word value in isolation, but only Agua Caliente's interpretation is a *reasonable* interpretation of the statute as a whole. The Department's interpretation—that NRG Energy's share of the investment tax credits has no value for purposes of valuing renewable energy property until it uses the credit to offset a federal tax liability—is not supported by the plain meaning of the statute, flies against the context of the statute, and runs contrary to general property law principles. *See* A.R.S. § 42-14155.

¶14 Given its plain meaning, value is best defined here as the monetary worth of the investment tax credits. Both parties agree with this general definition, but diverge in whether the deferred credits have monetary worth before NRG Energy uses the credits to offset a federal tax liability. Pointing out that Section 42-14155(D)(6) addresses the taxable original cost of renewable energy equipment, Agua Caliente argues the monetary worth is the full amount of the claimed credits, set when Agua Caliente placed the equipment in service and claimed the credits. Zeroing in on the word "value" in isolation, the Department urges that because the credits are not transferrable and cannot be sold, they have "[no] monetary worth apart from [their] specific use."

¶15 A plain reading of the text supports Agua Caliente's interpretation: an investment tax credit's monetary worth, and thus its value, is the full amount of the credit claimed, even before its use. Value in this context "appli[es] to the . . . equipment," not Agua Caliente's upline owner NRG Energy. A.R.S. § 42-14155(D)(6). So whether NRG Energy

derives its share of the tax savings from the credits is immaterial to the valuation of Agua Caliente's property.

**¶16**        No plain understanding of the statute's text as a whole supports the Department's interpretation. Relying on unrelated case law, the Department proposes that tax credits amounting to over $400 million have no monetary worth until the owner derives "an actual economic benefit" from the credits. *See Randall v. Loftsgaarden*, 478 U.S. 647, 657 (1986) (tax credits do not qualify as "income received" from a purchase of fraudulent securities); *Hargroder v. Hargroder*, 682 So.2d 999, 1001 (La. App. 1996) (finding an unused tax credit is not relevant to a child support determination). But this line of reasoning, while plausible in the context of determining whether tax credits qualify as income, is untenable in the context of Section 42-14155. These cases—and others that follow this line of reasoning—suggest that even the use of a tax credit to offset a tax liability is not an economic benefit to the taxpayer because there is no accession to wealth. *See, e.g., Randall*, 478 U.S. at 657 ("we would require compelling evidence before imputing to Congress an intent to describe the tax benefits an investor derives from tax deductions or credits attributable to ownership of a security as 'income received thereon'"); *Tempel v. Comm'r*, 136 T.C. 341, 350–51 (2011) (courts "treat government-granted rights as capital assets" rather than income because there is no "accession to wealth"); Rev. Rul. 79-315, 1979-2 C.B. 27 (IRS RRU 1979) (tax rebates used to offset tax liability are not "includible in the individual's gross income"). The case law on which the Department relies does not support the proposition that deferred investment tax credits have no monetary worth in determining renewable energy equipment's taxable original cost.

**¶17**        Moreover, the word value does not exist in a vacuum, but is instead embedded in the definition of "taxable *original* cost." *See* A.R.S. § 42-14155(D)(4), (6) (emphasis added) (original cost is set at the acquisition or construction of the equipment). Under the Department's interpretation, the statute would treat tax credits like depreciation deductions which are subject to change every year. But this is not supported by the statute. "Taxable original cost" is a separate, threshold definition which is not subject to change unless the equipment owner acquires additional property or claims additional tax credits. A.R.S. § 42-14155(D)(6). Importantly, this definition still includes the word *original*. The Department supposes that the taxable *original* cost of Agua Caliente's equipment should be modified regularly as NRG Energy uses the credits to offset its federal tax liability. We disagree; the word *original* dictates that the value of a tax credit is fixed upon acquisition of the credit rather than being deducted as it is used.

**¶18**        The Department also erroneously analogizes the monetary worth of a deferred tax credit with the monetary worth of a judgment against an individual who files a no-asset bankruptcy proceeding. The Department states that "a judgment that is not collectable," like that against an individual in a no-asset bankruptcy proceeding, does not have the same "value" as a judgment against an individual that has sufficient assets to satisfy the judgment. Following this line of reasoning, the Department suggests that a deferred tax credit does not have the same "value" as one that has been used to offset a tax liability. Although NRG Energy is yet to use its share of the credits to offset its federal income tax liability, it still can use the credits when it elects to do so. *See* 26 U.S.C. § 38(a). These investment tax credits may be carried forward up to 20 years without losing any of their monetary worth. 26 U.S.C. § 39(a)(1)–(2). A deferred investment tax credit is not analogous to a non-collectible judgment.

II.    **The Arizona Constitution and general principles of Arizona property law support uniformly valuing renewable energy equipment regardless of the owner's income.**

**¶19**        In its reply brief, Agua Caliente argues the Department's proposed interpretation of Section 42-14155 may open potential violations of the Uniformity Clause of the Arizona Constitution. At oral argument before this Court, the Department maintained this argument was waived because Agua Caliente did not address the issue in its opening brief. But Agua Caliente raised this argument in rebuttal to the following argument in the Department's answering brief: "Several Arizona statutes and even Arizona's Constitution provide for different tax treatment of properties for property tax purposes depending on the owner's tax status or income level." ARCAP 13(c) (a reply brief "must be strictly confined to rebuttal of points made in the appellee's answering brief"). Because the Department raised the issue of whether the Arizona Constitution allows the legislature to set different property tax rates based on the owner's income, we will exercise our discretion to consider Agua Caliente's responsive argument to the extent that it informs our plain reading of the statute.

**¶20**        In relevant part, the Arizona Constitution provides, "all taxes shall be uniform upon the same class of property." Ariz. Const. art. 9, § 1. Not all property must be taxed at the same rate, but "property of the same character must be taxed the same." *In re Am. W. Airlines, Inc.*, 179 Ariz. 528, 531 (1994). And property tax classifications must be reasonable and "rest upon real differences" in the property. *Id.*

¶21        "For tax purposes, Arizona values property at its 'full cash value.'" *Maricopa Cnty. v. Viola*, 251 Ariz. 276, 278, ¶ 9 (App. 2021). While "'full cash value' generally means 'fair market value,'" *id.* (cleaned up), the Department determines the full cash value of taxable property in accordance with statutory methods provided depending on the type of property, *see* A.R.S. § 42-14151 to -14159. Under Arizona's property tax system, "it is the property that owes the tax, and not the owner." *Santos v. Simon*, 60 Ariz. 426, 429 (1943). In other words, "[t]he owner of real property is not personally liable for real property taxes; such taxes represent a lien against the land itself and are not a personal obligation of the property owner." *Peabody Coal Co. v. Navajo Cnty.*, 117 Ariz. 335, 338 (1977), *disapproved of on other grounds by U.S. W. Commc'ns, Inc. v. Ariz. Dep't of Revenue*, 199 Ariz. 101 (2000); *Santos*, 60 Ariz. at 429 ("The whole proceeding to collect taxes is in rem."). Arizona's property tax system is *ad valorem* because the state does not implement a "personal taxation[,] but rather [] a tax against the property as a thing." *U.S. v. Allegheny Cnty.*, 322 U.S. 174, 184 (1944), *abrogated by U.S. v. City of Detroit*, 355 U.S. 466 (1958).

¶22        Nonetheless, the Department suggests that the legislature may have intended to value identical renewable energy equipment differently based on the income level of its owner. But this runs afoul of the basic tenets of Arizona's property tax system. Under the Department's interpretation, the property tax owed on renewable energy equipment would depend on the owner's federal income tax liability. The Department supposes the legislature imposed a *greater* property tax on equipment whose owner has *zero* taxable income than on equipment whose owner has billions of dollars in taxable income for no reason other than that the owner has a greater income. This result alone illustrates the unreasonableness of the Department's position. It would impose "nonuniform taxes on identical property used for the same purpose by owners in the same industry" based only on the owner's taxable income. *See In re Am. W. Airlines, Inc.*, 179 Ariz. at 530. This is contrary to the *ad valorem* nature of Arizona's property tax system. *See id.* at 531–32.

¶23        The Department invokes property tax exemptions for non-profit entities and the Arizona Constitution's "senior freeze" provision to try to illustrate that the legislature can set property taxes based on the property owner's income level. *See* Ariz. Const. art. 9, § 18(7) (a property's value cannot increase if the owner is an individual aged 65 or older whose total income does not exceed 400% of the supplemental security income benefit rate that the Social Security Act's section 1611(b)(1) establishes); A.R.S. § 42-11105(D) (non-profit healthcare providers exempt from federal income tax are also exempt from Arizona property tax). But constitutional

provisions protecting the elderly and statutes affording tax breaks to non-profit healthcare providers are reasonable ways to differentiate between property owners. *See In re Am. W. Airlines, Inc.*, 179 Ariz. at 531. But whether similarly situated property owners have sufficient income to use a tax credit, is not. *See id.* at 531–32.

**¶24** These general principles of Arizona property law provide additional support for Agua Caliente's interpretation of Section 42-14155. The statutory valuation of renewable energy equipment should not be dependent on the income level of the equipment's owner as the Department suggests.

**¶25** The plain text of Section 42-14155 is not susceptible to multiple reasonable interpretations. An investment tax credit's value, for the purpose of valuing renewable energy equipment, is the full amount of the claimed credit, regardless of whether it has been used to offset a tax liability.

## CONCLUSION

**¶26** We reverse the tax court's grant of summary judgment in the Department's favor and grant summary judgment in favor of Agua Caliente. We remand to the tax court to assess Agua Caliente's renewable energy equipment for tax years 2016 forward consistent with this decision. Agua Caliente has requested an award of attorneys' fees and costs incurred on appeal pursuant to Section 12-348(B) ("a court may award fees and other expenses to any party . . . that prevails by an adjudication on the merits in an action brought by the party against this state . . . challenging . . . [t]he assessment . . . of taxes"). Because Agua Caliente has prevailed on appeal, we grant its reasonable attorneys' fees and costs upon compliance with ARCAP 21.

